**FILED**

**JUNE 24, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 3:07 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE BY INTERCHANGE

| | | |
|---|---|---|
| Christina D. Carlton, | ) | Docket No. 2015-06-1276 |
| Employee, | ) | |
| v. | ) | State File No. 94828-2015 |
| | ) | |
| Wood Personnel Services | ) | |
| Employer, | ) | |
| And | ) | Judge Robert Durham |
| | ) | |
| Key Risk Ins. Co., | ) | |
| Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS
## (REVIEW OF THE FILE)

THIS CAUSE came before the undersigned Workers' Compensation Judge on June 15, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Christina Carlton, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Wood Personnel Services (WPS), is obligated to provide workers' compensation benefits. Pursuant to Rule 0800-02-21-.02(13) (2015) of the Tennessee Compilation Rules and Regulations, Ms. Carlton requested the Court issue a ruling based on a review of the file without an evidentiary hearing. WPS voiced no objection. On June 6, 2016, the Court sent a Docketing Notice to the parties regarding the contents of the record before it. (T.R. 4.) Neither party raised any objection to the documents contained in the record or offered any additional evidence. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment.

The dispositive issue is whether Ms. Carlton's right wrist complaints arise primarily out of and in the course and scope of her employment with WPS. A secondary issue is whether Ms. Carlton is entitled to any temporary partial disability benefits. The Court finds the evidence submitted by Ms. Carlton is sufficient to establish she is likely to prevail at a hearing on the merits regarding the compensability of her alleged injury,

1

thus WPS is obligated to provide reasonable and necessary medical treatment with an authorized physician. However, the Court further finds that WPS was justified in its refusal to return Ms. Carlton to light duty following her outburst on October 22, and so she is not entitled to temporary disability benefits at this time.[1]

## History of Claim

Ms. Carlton is a fifty-two-year-old resident of Davidson County, Tennessee, who worked for WPS, a temporary employment agency, on October 13, 2015. (T.R. 1.) On that date, Ms. Carlton began training for an assignment as a warehouse clerk, which required her to inspect three-pound tubs of cookie dough. (Ex. 1 at 27.) According to the Employee Account of Incident form, at 9:00 a.m., Ms. Carlton "picked up a tub and when she tilted it up to audit, do quality control, her wrist popped." (Ex. 2.) Ms. Carlton claimed she felt immediate pain in her right wrist and reported it to her line supervisor as soon as it happened. (Ex. 3.)

On October 15, Ms. Carlton completed various forms for WPS and selected U.S. HealthWorks from a panel provided by WPS as her authorized treating physician. (Ex. 4 at 1.) A work status report from Dr. Harold Nevels with U.S. HealthWorks dated October 15 states Ms. Carlton's diagnosis was an "unspecified sprain" and indicated x-rays revealed a questionable cortex fracture of the radius.[2] (Ex. 1 at 3.) Dr. Nevels further indicated Ms. Carlton could return to work with a restriction against using her right hand. *Id.*

On October 19, Ms. Carlton returned to Dr. Nevels. (Ex. 1 at 4.) According to the Work Status Report, Dr. Nevels determined her x-rays were negative. He recommended physical therapy and continued her restriction against using her right hand. *Id.* The record also contains an interview form completed by Todd Drumright, supervisor for WPS, from an interview conducted with Dr. Nevels on October 19. (Ex. 1 at 5.) According to the form, Mr. Drumright asked Dr. Nevels if Ms. Carlton's work-related duties "definitely" caused her injury, and he opined, "Yes, as far as he can tell." *Id.* Dr. Nevels further opined Ms. Carlton would need a "couple of days to let the swelling go down." The form goes on to state that Dr. Nevels felt Ms. Carlton was exaggerating her injury, and he would see her in a couple of days in anticipation of releasing her. *Id.*

Ms. Carlton worked in WPS' office while on light duty. WPS provided written statements from several WPS employees averring that on October 22, Ms. Carlton began screaming and shouting at Mr. Drumright, apparently over his request that she sign a light duty form regarding her restrictions and her promise not to violate them. (Ex. 5.) Ms. Carlton refused to sign the document, and when he insisted, she became very loud and

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

[2] The parties did not include complete medical records from U.S. HealthWorks.

belligerent in front of co-workers and job applicants. Eventually, Mr. Drumright told her to leave, and when she resisted, threatened to call the police. Ms. Carlton then left the premises. *Id.*

Ms. Carlton returned to Dr. Nevels on October 22. (Ex. 1 at 7.) Ms. Carlton complained of continued pain in her wrist and requested a sling so she could hold her wrist close to her body to keep from hitting it. Dr. Nevels noted she was very angry, and her pain seemed to be "out of proportion" to her injury. *Id.* Nevertheless, he recommended an orthopedic referral and continued her restrictions. *Id.*

On October 26, WPS offered two panels of orthopedists to Ms. Carlton. (Ex. 4 at 2.) She chose Dr. Doug Weikert from one panel and Dr. Paul Abbey from another, although there is no indication which doctor was chosen first or why another panel was offered. (Ex. 4 at 2, 3.)

In any event, Ms. Carlton did not see either Dr. Weikert or Dr. Abbey, but went to Dr. N.K. Singh with Vanderbilt Orthopedics on October 30. (Ex. 1 at 11.) Dr. Singh noted Ms. Carlton complained of constant right wrist and forearm pain. She stated the pain began when she lifted a tub of cookie dough off a conveyor belt to inspect it, and she felt a sudden "pain and pop to the distal forearm." *Id.* She also complained of a flare-up while using a tape gun. Examination revealed tenderness in her right forearm along the radial aspect as well as tenderness in her right wrist with forced flexion and extension. Dr. Singh diagnosed her with a right wrist sprain and right forearm tenosynovitis. He also opined that "more than 50% of her current complaints are related to a work injury." *Id.* He placed her in a splint, prescribed Voltaren, and provided restrictions against repetitive wrist movement and lifting with her right arm. *Id.*

On November 13, Ms. Carlton returned to Dr. Singh. (Ex. 1 at 24.) Ms. Carlton claimed some improvement since using the thumb splint and Voltaren. However, she still complained of some pain with flexion and extension of her wrist as well as some tenderness in her mid-forearm. *Id.* Dr. Singh recommended she undergo physical therapy, and the only restriction he recommended was using the thumb splint for support while working. *Id.*

On November 16, Grant Guyse, adjuster for WPS' insurance carrier, wrote to Dr. Singh seeking his opinion regarding causation. In the letter, Mr. Guyse described Ms. Carlton's alleged work injury as follows: "As you are aware, the morning of Ms. Carlton's first day on the job, she just tilted (did not pick it up according to Ms. Carlton) a 3 lb. box of frozen cookie dough and injured her right wrist." (Ex. 1 at 27.) He then asked Dr. Singh whether he believed to a reasonable degree of medical certainty that Ms. Carlton's injuries arose primarily out of and in the course and scope of her employment. *Id.* Dr. Singh responded on November 24, by answering "no" and explaining that, "I wouldn't expect the above description to have contributed to > 50% of the wrist pain."

3

*Id.*

Ms. Carlton filed a Petition for Benefit Determination (PBD) on December 16, 2015, after WPS denied her claim. (T.R. 1.) In her petition, Ms. Carlton requested four weeks of temporary disability benefits, although there is no indication in the record when she stopped working for WPS or the reason for her separation. *Id.* WPS filed a wage statement indicating Ms. Carlton's average weekly wage was $289.44. (Ex. 7.)

The parties were unable to reach a mediated agreement, and the Mediator filed a Dispute Certification Notice on January 21, 2016. (T.R. 2.) Ms. Carlton filed an REH seeking a decision on record review on May 20, 2016. (T.R. 3.) On June 6, 2016, the Court sent a Docketing Notice to the parties regarding the contents of the record before it. (T.R. 4.) Neither party raised any objection to the documents contained in the record or offered any additional evidence.

### Findings of Fact and Conclusions of Law

The Court must interpret Workers' Compensation Law fairly, impartially, and by basic principles of statutory construction, favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Ms. Carlton need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, she has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*; *see also* Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order to prevail, Ms. Carlton must establish she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

4

However, in order to establish she sustained a compensable injury, Ms. Carlton must establish to a "reasonable degree of medical certainty" that in the "opinion of the physician" her condition arose primarily out of and in the course and scope of her employment. *See* Tenn. Code Ann. § 50-6-102(13) (2015). Thus, lay testimony must generally be corroborated by expert medical testimony in order to meet the burden of proof regarding causation. *See Scott, supra,* at *12.

In this instance, Ms. Carlton's supervisor asked Dr. Nevels, her original authorized physician, if her work-related duties "definitely" caused her injury, and he opined, "Yes, as far as he can tell." (Ex. 1 at 5.) Ms. Carlton subsequently treated with Dr. Singh, and after her first visit, Dr. Singh opined that, "more than 50% of her current complaints are related to her work injury." (Ex. 1 at 11.) However, the adjuster for WPS, Grant Guyse, wrote to Dr. Singh, describing Ms. Carlton's injury as occurring on her first day when "she just tilted (did not pick it up according to Ms. Carlton) a 3 lb. box of frozen cookie dough." (Ex. 1 at 27.) Based on this description, Dr. Singh stated, "I wouldn't expect the above description to have contributed to > 50% of the wrist pain," and thus found that her work duties did not primarily cause her injury. *Id.*

Normally, Dr. Singh's most recent opinion on causation, as the authorized treating specialist, would prevail on this issue. However, in this instance, Dr. Singh's response to Mr. Guyse's letter appears to be based on a faulty premise; i.e., that Ms. Carlton did not pick up the tub of cookie dough, but merely tilted it toward her. (Ex. 1 at 27.) Dr. Singh specifically qualified his opinion by stating he "wouldn't expect the above description" to have contributed more than 50% to her wrist pain. *Id.*

The documents provided to the Court do not support Mr. Guyse's description of the October 13, 2015 incident in his letter to Dr. Singh. In the "Employee Account of Incident" form completed by Ms. Carlton on October 15, 2015, she described the incident as follows: "*Picked up a tub,* and when she tilted it up to audit, do quality control, her wrist popped." (Ex. 2.) (Emphasis added.) In the only other description of the incident included in the record, Dr. Singh noted that Ms. Carlton told him on her first day of this particular job, "*she was lifting to inspect the cookie dough off the belt*" when she felt a pop in her right wrist and forearm. (Ex. 1 at 11.) (Emphasis added.) The Court finds it relevant that immediately following this description, Dr. Singh opined her injury did causally relate to her work activities. *Id.* Upon review of the record, the evidence preponderates against Mr. Guyse's description of the incident in his letter to Dr. Singh, thus negating Dr. Singh's response on November 24.

As a result, the Court finds Ms. Carlton provided sufficient evidence from which a trial court can determine she is likely to prevail at a hearing on the merits regarding causation. Therefore, WPS shall provide reasonable and necessary medical care for Ms. Carlton's work-related injury to her right upper extremity on October 13, 2015, with Dr. Singh as her authorized treating physician.

With regard to temporary disability benefits, the Court finds WPS had light duty work available for Ms. Carlton that was within her restrictions, but did not allow Ms. Carlton to return to work due to her outburst on October 22. (Ex. 5.) In *Mace v. Express Services, Inc.*, No. 2015-06-0059, TN Wrk. Comp. App. Bd. LEXIS 49, at *8, 9 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Appeals Board held that even though an employee may have an injury that renders her temporarily disabled, an employer still has a right to enforce workplace rules. Thus, if an employer refuses to put an employee to work because of misconduct "under established or ordinary workplace rules and/or expectations," and those actions were a true motivation for the refusal to allow an employee to work, then the employer will not be obligated to pay temporary disability benefits. *Id.* at *9.

The unrebutted testimony is that on October 22, 2015, Ms. Carlton refused to sign a light duty work form and began screaming and shouting at her supervisor, Mr. Drumright, in front of other employees as well as job applicants. (Ex. 5.) Ms. Carlton continued this behavior and refused to leave upon repeated requests. She did not leave until WPS employees threatened to call the police and have her arrested for trespassing. *Id.*

In this instance, the Court finds Ms. Carlton's conduct on October 22, 2015, constituted misconduct "under ordinary workplace rules," and was the true motivation for WPS' refusal to allow her to return to work at light duty. *Mace, supra,* at *9. As a result, Ms. Carlton failed to prove she is likely to prevail on the issue of temporary disability benefits at a hearing on the merits. *McCord, supra,* at *7-8. Therefore, her request for temporary disability benefits is denied at this time.

IT IS, THEREFORE, ORDERED that:

1. WPS shall authorize Dr. Singh to provide reasonable and necessary medical treatment for Ms. Carlton's work-related injury of October 13, 2015. Should Dr. Singh refuse to see Ms. Carlton, WPS shall provide a panel from which Ms. Carlton may select an authorized physician pursuant to Workers' Compensation Law.

2. Ms. Carlton's request for temporary disability benefits is denied at this time.

3. This matter is set for an Initial Hearing on August 5, 2016, at 9:30 a.m.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of

6

compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED THIS THE 24th DAY OF JUNE, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 855-689-9049 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

7

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

8

**APPENDIX**

Exhibits:

1.   Medical records of US Healthworks and Vanderbilt Medical Center
2.   Employee Account of Incident Form
3.   Post Injury Employee Interview
4.   Notice of Denial
4.   Choice of Physician Forms
5.   Statements of various WPS employees
6.   WPS Light Duty Agreement
7.   Wage Statement
8.   Photographs of cookie tubs

Technical Record:

1.   Petition for Benefit Determination
2.   Dispute Certification Notice
3.   Request for Expedited Hearing
4.   Transfer Order
5.   Amended Docketing Notice

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 24th day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Christina Carlton | X | | | 2701 Glenmont Court, Nashville, Tennessee 37210 |
| Michael Jones | | | X | mjones@wimberlylawson.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

9